IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>Philadelphia Regional Office<br>One Penn Center<br>1617 JFK Boulevard, Suite 520<br>Philadelphia, PA 19103,<br><br>                              Plaintiff,<br><br>v.<br><br>IKENNA IKOKWU<br>6310 East Hills Court<br>Cumming, GA 30041,<br><br>WINNING THE MONEY GAME WITH IKE, INC.,<br>1050 Cambridge Square, Suite D,<br>Alpharetta, GA 30009,<br><br>and<br><br>WINNING THE MONEY GAME, LLC,<br>1050 Cambridge Square, Suite D,<br>Alpharetta, GA 30009,<br>                              Defendants. | Case No. _____<br><br>(Jury Demanded) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows against defendants Ikenna Ikokwu and his companies Winning the Money Game With Ike, Inc. ("Ike Inc.") and Winning the Money Game, LLC, ("Money LLC") (collectively the "Entity Defendants"):

## SUMMARY

1. Ikenna Ikokwu and the Entity Defendants made material misstatements and failed to disclose critical information to their clients when recommending that the clients invest in what ultimately was exposed as a Ponzi-like fraud.

2. In less than two years, between September 2012 and April 2014, Ikokwu persuaded more than twenty of Defendants' clients to invest a combined total of approximately $5 million in securities issued by FutureGen Company ("FutureGen"), which was run by a man named Lawrence Schmidt.

3. In recommending the FutureGen investment, Ikowkwu fraudulently represented himself as an objective and independent investment adviser his clients could trust for sound advice regarding how best to protect and grow what was in many cases their retirement savings. Ikwokwu also fraudulently told his clients that he did not receive compensation from any other party for recommending a particular investment. Critically, Ikokwu failed to disclose that he received substantial kickbacks from FutureGen for persuading his clients to invest in FutureGen securities.

4. In addition, Ikokwu lied to investors and told them that he had conducted substantial due diligence into FutureGen prior to recommending that they invest in its securities. Contrary to that representation, Ikokwu did almost nothing to vet FutureGen as a potential investment for his clients. He did not review any audited financial statements or any underlying documentation to ascertain that money raised was invested properly and performing as Schmidt represented.

5. Ikokwu also failed to disclose to Defendants' clients that he had reason to believe FutureGen was an unsound investment. Ikokwu solicited clients to invest in FutureGen securities, in part, by touting that he and his family members had successfully invested in FutureGen and a related company, Commercial Equity Partners ("Commercial Equity"). However, Ikokwu failed to

disclose to his clients that on July 1, 2013, Commercial Equity defaulted on the largest investment and owed Ikokwu's family over $450,000.

6. Not only did Ikokwu fail to disclose that problem to his clients, he continued to solicit clients to invest in FutureGen securities. In the following ten months, Defendants' clients invested over $2.5 million in FutureGen securities, and Defendants benefited handsomely from these investments, realizing over $60,000 in additional undisclosed commissions from FutureGen.

7. While operating FutureGen, Schmidt siphoned off almost $2 million of investors' money for his own benefit and used new investor money to pay off earlier investors. In April 2014, while under scrutiny from the SEC, Schmidt fired all of FutureGen's employees and fled the country.

8. In addition to engaging in a fraud that caused their clients to lose millions of dollars, Defendants violated the fiduciary duty they owed to their clients. As a result of the conduct described in this Complaint, Defendants Ikokwu, Ike Inc., and Money LLC violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6]. Defendants Ikokwu and Ike, Inc. are also liable under 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)]. In addition, Defendant Ikokwu is liable as a controlling person under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

## JURISDICTION AND VENUE

9. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)] to enjoin such acts,

transactions, practices, and courses of business, to obtain disgorgement and civil penalties, and for other appropriate relief.

10. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 214(a) of the Advisers Act [15 U.S.C. § 80b-14(a)].

11. Venue lies in this judicial district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. This district has been the principal place of business for FutureGen since its inception, and this court is currently presiding over the related case, *Securities and Exchange Commission v. Schmidt*, No. 14-cv-01002 (D.D.C.). In addition, Defendants transact business within this judicial district, having conducted substantial business with Schmidt and FutureGen, and certain of the acts, transactions, practices, and courses of business relating to the violations of the federal securities laws charged herein occurred within this judicial district.

12. In connection with the conduct alleged in this Complaint, Ikokwu and the Entity Defendants, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in, or instrumentalities of, interstate commerce, or the mails, or the facilities of a national securities exchange.

13. Plaintiff demands a trial by jury.

## DEFENDANTS

14. **Ikenna Ikokwu**, age 42, is a resident of Cumming, Georgia and the founder, owner, and managing member of Money LLC. He is also the founder, owner, and President of Ike Inc. Ikokwu is responsible for the day-to-day operations of Money LLC and Ike Inc., both of which are essentially one-person operations, and is solely responsible for both soliciting new clients and

providing investment advice. Ikokwu is a CPA currently licensed by the State of Georgia and a Certified Financial Planner. He purports to be a best-selling author of personal finance books.

15. **Winning the Money Game with Ike, Inc.** is a Georgia corporation with its principal place of business in Alpharetta, GA, that purports to provide financial planning advice, with a focus on life insurance and annuity products. Ikokwu formed this company in 2003 (under a different name) and has been its owner and president since its inception. Ike Inc. is not registered with the Commission in any capacity.

16. **Winning the Money Game, LLC** is a Georgia limited liability company with its principal place of business in Alpharetta, GA. Money LLC is a Georgia state-registered investment adviser originally formed by Ikokwu (under a different name) in 2009. Ikokwu has been its owner and managing member since its inception.

## FACTS

### I. Defendants Defrauded Their Clients Regarding Investing in FutureGen

17. Ikowku and the Entity Defendants mislead their investment advisory clients into investing in FutureGen securities by, among other things: failing to disclose the kickbacks they received from FutureGen; lying that Ikokwu had performed extensive due diligence into FutureGen and the FutureGen securities; and touting his family's personal investments with Schmidt-related entities, while failing to disclose that Schmidt had failed to pay a debt he owed to Ikokwu's family.

**A.    Defendants Failed to Disclose That Ikokwu Received Secret Kickbacks for Persuading Defendants' Clients to Invest in FutureGen Securities**

18. In less than two years, Defendants' clients collectively invested more than $5 million in FutureGen securities.

19. As part of their pitch to their investment advisory clients, Defendants touted the fact that they were independent and did not receive any commissions or other compensation for

5

recommending specific securities. Indeed, in written marketing materials Defendants provided to clients and potential clients, they warned of the dangers of financial services providers who offer their own investment products:

> do you think [the financial service provider is] going to sell you someone else's investment [where someone else makes the lion's share of the profits], or, do you think they will sell you something where they get paid twice – once on the sales cost and again on the management fees?

Defendants' marketing materials assured prospective clients that Defendants did not receive undisclosed incentives for recommending certain investments.

20. Ikokwu made similar representations in Money LLC's Form ADV Part 2B ("Form ADV"), a disclosure brochure that Defendants were legally required to accurately prepare and maintain. In the Form ADV, Ikokwu wrote:

  a. "Other than salary, annual bonuses, and regular bonuses, Ike Ikokwu does not receive any economic benefit from any person, company or organization in exchange for providing clients advisory services through Winning the Money Game LLC."

  b. "Neither [Money LLC], nor its management persons, has any relationship or arrangement with issuers of securities."

  c. "Neither [Money LLC] nor its supervised persons accept any compensation for the sale of securities or other investment products, including asset-based sales charges or services fees from the sale of mutual funds;" and

  d. "[Money LLC] does not recommend that clients buy or sell any security in which a related person to [Money LLC] has a material financial interest."

21. Contrary to the representations in the marketing materials and required brochure, Defendants received undisclosed kickbacks from FutureGen for persuading clients to invest in FutureGen securities.

22. In April 2011, Ikokwu entered into an agreement with Schmidt whereby Ikokwu would receive referral fees ranging from 2.0% to 2.5% of the amount his clients invested in FutureGen, depending on the total amount invested. After entering into this agreement, Defendants began advising clients to invest in FutureGen securities.

23. In 2013, Ikokwu entered into an updated agreement with FutureGen that increased the kickback Ikokwu would receive if he successfully directed Defendants' clients to invest more than $1 million collectively in the calendar year.

24. Defendants convinced more than twenty clients to invest approximately $5 million in FutureGen securities. Based on these investments, Ikokwu received approximately $130,000 in undisclosed kickbacks from FutureGen, which greatly exceeded the management fees Ikokwu earned providing investment advice.

25. Defendants never disclosed this conflict of interest to their clients. Defendants did not disclose that Ikokwu was a selling agent of FutureGen or that he received commissions for advising and persuading his clients to invest in FutureGen. Instead, Defendants propagated the myth that Ikokwu was acting as their investment adviser and providing independent advice in return for the management fee they paid him.

### B. Defendants Lied About Their FutureGen Due Diligence

26. Ikokwu also defrauded his clients when he told them that he conducted "extensive" due diligence before he recommended investing in FutureGen securities, specifically promissory notes. In addition, Defendants did not provide their clients with FutureGen's offering documents. Rather, Defendants persuaded their clients to invest in FutureGen based on Ikokwu's assurances that he had performed due diligence and that FutureGen promissory notes were a low-volatility

investment that would provide a steady 11 to 14 percent return. Ikokwu also told at least one client that FutureGen had made a "special offering" with a "17% [rate] for an 18 month term."

27.  Contrary to these representations, Defendants did almost no due diligence into FutureGen before recommending it to their clients. Ikokwu did not review any audited financial statements for FutureGen and never attempted to confirm whether any of FutureGen's purported investments actually existed and were performing.

28.  In March 2014—less than one month before Schmidt fled the country and after Defendants had induced their clients to invest approximately $5 million in FutureGen securities—Ikokwu first reviewed an unaudited 2011 FutureGen financial statement in his possession. After reviewing this statement, Ikokwu emailed Schmidt: "If the 2011 financials are accurate, one would have to question why clients are being asked to participate in [FutureGen's] offerings." He stated further: "I'm pretty sure you don't want me submitting this to the SEC as it does not paint a favorable financial picture for [FutureGen]."

29.  Remarkably, even after sending this email to Schmidt, Defendants continued to recommend that their clients invest in FutureGen securities.

**C.    Defendants Failed to Disclose that Schmidt had Already Failed to Deliver as Promised**

30.  To persuade their clients to invest in FutureGen, Defendants regularly touted that Ikokwu and his family had successfully invested in Schmidt-related entities. However, Defendants failed to tell their clients that Schmidt had actually failed to pay back Ikokwu's family as promised, because Defendants benefitted from the undisclosed kickbacks.

31.  In 2009, Ikokwu began investing in promissory notes offered by another Schmidt company, Commercial Equity Partners ("Commercial Equity"). Prior to making his investment in Commercial Equity, Ikokwu did not request or obtain audited financial statements, nor did he ask

8

for any verification that Commercial Equity had actually made any of the investments listed on its unaudited financial statements. Subsequently, Ikokwu and his family members invested over $600,000 collectively in Commercial Equity and FutureGen securities.

32. In soliciting his clients to invest in FutureGen securities, Ikokwu showed clients copies of his and his family's account statements from Commercial Equity to demonstrate the purported returns they received from Schmidt.

33. Though Ikokwu used his family's investments with Schmidt as a selling point to clients, he failed to inform those clients that Schmidt and Commercial Equity failed to pay Ikokwu's family as promised.

34. On July 1, 2013, a $450,000 Commerical Equity promissory note that Ikokwu's family purchased came due. However, Commercial Equity was unable to pay back that financial obligation.

35. Through the summer of 2013, Ikokwu repeatedly requested that Commercial Equity and Schmidt cure the default and pay the amount owed. Four months later, Schmidt sent Ikokwu's family $45,250, which was about ten percent of the money Schmidt owed. Thereafter, Commercial Equity paid Ikokwu's family periodic interest payments until January 31, 2014, but did not pay any additional principal on the obligation. In April 2014, shortly before Schmidt fled the country, FutureGen paid Ikokwu's family $100,000, purportedly relating to the delinquent obligation of Commercial Equity.

36. Ikokwu did not disclose to his clients, including those who made investments in FutureGen securities after July 1, 2013, that Schmidt and his companies were currently delinquent on the largest investment Ikokwu and his family had made with Schmidt. Rather, Ikokwu continued

to recommend that Defendants' clients invest in FutureGen and he continued to receive secret kickbacks for the money Defendants' clients invested in FutureGen.

37. After July 1, 2013 when Schmidt failed to repay Ikokwu's family, Defendants' clients invested over $2.5 million in FutureGen. Ikokwu received more than $60,000 in kickbacks for these investments, with the last payment coming approximately one week before Schmidt fled the country.

38. The kickbacks from FutureGen made up the vast majority of Ikokwu's income from his financial advisory business in 2013 and 2014. Without the FutureGen payments Ikokwu's advisory business would have operated at a loss.

## II. Defendants Violated The Anti-Fraud Provisions of the Federal Securities Laws

39. During the relevant period, Ikokwu operated and controlled the Entity Defendants.

40. All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material. There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information important, and/or that disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

41. In connection with the conduct described herein, Defendants acted knowingly and/or recklessly. Among other things, Defendants knew or were reckless in not knowing that they were making material misrepresentations and omitting material facts in connection with selling or offering FutureGen securities.

42. Ikokwu had ultimate authority for the false and misleading statements and omissions made orally and in writings provided to his clients. He signed all investment advisory agreements with Defendants' clients and drafted and provided all marketing materials to Defendants' clients. Ikokwu drafted and approved the language in Money LLC's Form ADV filed with the Commission.

Ikokwu was the only individual engaged in marketing, selling, and providing investment services to Defendants' clients and potential clients.

43. Through their material misrepresentations and omissions, Defendants knowingly, recklessly, or negligently obtained money or property from investors.

44. Through this scheme, Defendants knowingly, recklessly, or negligently engaged in acts, transactions or courses of business that operated as a fraud or deceit upon their clients, and offerees, purchasers and prospective purchasers of the FutureGen notes.

### III. Ikokwu And Ike Inc. Acted as Unregistered Broker-Dealers in Violation of the Federal Securities Laws

45. Ikokwu failed to observe the corporate distinction between Money LLC and Ike Inc., and provided investment advice to clients through Ike Inc., which was not registered as an investment adviser or broker-dealer.

46. Defendants charged new clients an initial implementation fee that was generally between $1,000 and $2,500, or in certain cases 1 percent of the client's annual income. Ike Inc. then charged clients placed in FutureGen securities an annual management fee of one to two percent of the value of their investment. This annual management fee was disclosed in an investment advisory agreement signed by Ikokwu and the investor.

47. FutureGen promissory notes were one investment that Ikokwu recommended to clients of Ike Inc. Typically, FutureGen promissory notes had 11 to 14 percent annual rates of return over terms ranging from 3 to 6 years. The money raised from investors was pooled by FutureGen and purportedly used by Schmidt to generate returns from investing in tax liens and real estate.

48. Ikokwu's clients could choose to receive periodic interest or have the interest reinvested and paid at the end of the term of the note. The promissory note provided that the interest would be secured by the tax liens purchased by FutureGen. Ikokwu did not directly provide

FutureGen offering materials to investors, and he did not know whether they received copies of the offering memorandum from FutureGen.

49.  The FutureGen notes sold to investors as a result of the Defendants' recommendations are securities within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], and the fraud and other misconduct described herein was in the offer of, and/or in connection with the purchase or sale of securities.

50.  Despite receiving these commissions from FutureGen, Ikokwu and Ike Inc. did not register as a broker-dealer.

**IV.     Defendants Violated the Advisers Act**

51.  By advising their clients to invest in FutureGen securities in exchange for compensation, Defendants acted as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

52.  Defendants' false and misleading statements in persuading their clients to invest in FutureGen defrauded their clients in violation of the Advisers Act.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Securities Act**
**(Against All Defendants)**

53.  The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 52, above, as if the same were fully set forth herein.

54.  From at least 2012 through April 2014, as a result of the conduct alleged herein, Defendants Ikokwu, Ike Inc., and Money LLC, knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate

commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a.     employed devices, schemes or artifices to defraud;

    b.     obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.     engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

55.     By engaging in the foregoing conduct, Defendants Ikokwu, Ike Inc., and Money LLC violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
(Against All Defendants)

56.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 52, above, as if the same were fully set forth herein.

57.     From at least 2012 through April 2014, as a result of the conduct alleged herein, Defendants Ikokwu, Ike Inc., and Money LLC, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

    a.     employed devices, schemes or artifices to defraud;

    b.     made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c.     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

58.     By engaging in the foregoing conduct, Defendants Ikokwu, Ike Inc., and Money LLC violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
### Acting as Unregistered Broker-Dealer Under Section 15(a)(1) of the Exchange Act
### (Against Defendants Ikokwu and Ike Inc.)

59.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 52, above, as if the same were fully set forth herein.

60.     From at least 2012 through April 2014, as a result of the conduct alleged herein, Defendants Ikokwu and Ike Inc. made use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered with the Commission as a broker or dealer.

61.     By engaging in the foregoing conduct, Defendants Ikokwu and Ike Inc. violated, and unless restrained and enjoined will continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### FOURTH CLAIM FOR RELIEF
### Controlling Person Liability Under Section 20(a) of the Exchange Act
### (Against Defendant Ikokwu)

62.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 61, above, as if the same were fully set forth herein.

63. In addition to his liability under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Ikokwu is also liable as a controlling person under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

64. Defendant Ikokwu is, or was at the time acts and conduct set forth herein were committed, directly or indirectly, a person who controlled Ike Inc. and Money LLC. As detailed above, Ike Inc. and Money LLC, sold securities in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

65. By reason of the foregoing conduct, Ikokwu is jointly and severally liable with, and to the same extent as, the persons he controlled for violations of Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78o(a)(1)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## FIFTH CLAIM FOR RELIEF
### Liability Under Section 206(1) and (2) of the Advisers Act
(Against All Defendants)

66. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 52, above, as if the same were fully set forth herein.

67. From at least 2012 through April 2014, as a result of the conduct alleged herein, Defendants Ikokwu, Ike Inc., and Money LLC, knowingly or recklessly or, with respect to subpart b below, negligently, as investment advisers, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails:

    a. employed devices, schemes or artifices to defraud any client or prospective client;

    b. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any client or prospective client.

68. By engaging in the foregoing conduct, Defendants Ikokwu, Ike Inc., and Money LLC violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendants Ikokwu, Ike Inc., and Money LLC from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) and 15(of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6]; and permanently restraining and enjoining Defendants Ikokwu and Ike Inc. from violating Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### II.

Ordering Defendants Ikokwu, Ike Inc., and Money LLC to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint.

### III.

Ordering Defendants Ikokwu, Ike Inc., and Money LLC to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

### IV.

Retaining jurisdiction of this action for purposes of enforcing any final judgments and orders; and

V.

Granting such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

Dated: September 30, 2016          /s/ John V. Donnelly III
                                   David L. Axelrod (D.C. Bar number 497788)
                                   John V. Donnelly III (D.C. Bar number 477876)

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
One Penn Center
1617 JFK Boulevard, Suite 520
Philadelphia, Pa. 19103
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
DonnellyJ@sec.gov

Of Counsel:
Sharon B. Binger
G. Jeffrey Boujoukos
Kingdon Kase
Jack C. Easton

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
One Penn Center
1617 JFK Boulevard, Suite 520
Philadelphia, Pa. 19103
Telephone: (215) 597-3100
Fascimile: (215) 597-2740